ADALINE COLVIN, adm'x, &c. *vs.* SARAH ANN CURRIER and GEORGE W. CURRIER.

Where work and labor are performed and materials furnished, by a carpenter, in erecting buildings upon the separate estate of a married woman, at the request of her and her husband, and the husband is insolvent, the wife's separate estate may be charged, in equity, with the payment of the debt. T. R. STRONG, J. dissented.

The separate estate of a married woman, in real property owned by her, since the acts of 1848 and 1849 in relation to married women, is none the less a *separate* estate because it is a *legal,* instead of an *equitable,* estate.

And where such separate estate has been benefited, and increased in value, by erections made thereon, upon the faith of such estate, and the creditor will be remediless unless payment out of such estate be enforced by a court of equity, jurisdiction will be entertained by those courts, on the ground that it is a

part of their duty to prevent acknowledged wrongs, and to protect acknowledged rights, when courts of law are inadequate to afford relief.

The only difference between the separate estate of a married woman, as previously recognized and acted upon by courts of equity, and their title to property acquired or held under the acts of 1848 and 1849, is, that the former is an equitable, and the latter a legal, estate or title. *Per* WELLES, J.

And giving relief to creditors against the separate estate of married women acquired or held under the acts of 1848 and 1849, is only extending an ancient and well established principle of equitable jurisprudence to a state of things created by the legislature and which is clearly within the reason and necessity of the principle. *Per* WELLES, J.

APPEAL by the plaintiff from a judgment entered at a special term, allowing a demurrer to the complaint. The plaintiff, in his complaint, alleged the death of Ethan Colvin, intestate, in March, 1854, and the appointment of the plaintiff as his administratrix; and that Sarah Ann Currier was, on the 1st day of January, 1852, seised in fee of a piece of land particularly described in the complaint, in her own right; and that at that time the said George was and ever since has been the lawful husband of the said Sarah Ann; and that, shortly after the time aforesaid, they contemplated building and did build on the land a dwelling house and other buildings, during the life time of the said Ethan Colvin; and that they employed Colvin, he being a carpenter and joiner by trade, to do work on the buildings, and that he worked on the buildings and furnished materials in and about said work, at their request, and which they undertook and promised to pay; that, by means of those services and materials furnished, the premises were increased in value from six hundred to five thousand dollars; that the materials furnished and the work done was worth six hundred dollars; that George W. Currier is irresponsible, and that the plaintiff has no means of collecting the demand except out of the separate property of the defendant Sarah Ann Currier, who undertook and promised to pay the same. The plaintiff demanded judgment or decree that the demand be paid out of the separate estate of the said Sarah Ann Currier. To the complaint the defendant Sarah Ann Currier demurred, on the following grounds: "That it appears upon the face of the said

Colvin v. Currier.

complaint that there is a defect of parties defendant, the defendant being joined as a defendant with her husband, George W. Currier.   That it appears upon the face of the complaint that several causes of action have been improperly united, and different causes of action against this defendant and against the defendant George W. Currier.   That the complaint does not state facts sufficient to constitute a cause of action against this defendant."

*A. Lathrop,* for the appellant.   I.   The only test that can be adopted to ascertain whether an estate or interest be legal or equitable, is to inquire whether it comes under the peculiar province of a court of law or equity to protect it.   If an estate or interest be such as to bring it within the peculiar province of a court of equity, to preserve, protect or take charge of it, then it is called an equitable estate or interest; and whether it be such an estate or interest as requires a court of equity to look after it, always depends upon the peculiar state of facts which surround it, in connection with the rules of law applicable to it; and the question here is, whether by the rules of law, as they existed at the time the debt was contracted, the facts bring the case within the peculiar province of a court of equity; if so, then the defendant's estate must be denominated equitable estate; otherwise not.

II.   There can be no question that a *separate estate of a feme sole,* whatever its nature, kind or quality be, has always been regarded as an interest, under the peculiar province of a court of equity, to look after it and protect it.   And hence such an estate is denominated an equitable estate.   The only question there can be any doubt about, is as to what amounts to a *separate estate.*   I apprehend it must be regarded as pretty well settled, that no estate in a *feme sole* in lands can be regarded as a *separate estate,* where the husband has also rights and interests in the same lands, both interests existing at one and the same time.   (*See Mr. Justice Jewett's opinion in the Albany Fire Insurance Co.* v. *Bay,* 4 *Comst.* 11, 12; *and Pratt's opinion,* 27, *and the cases by them cited.*)   The reason

was, that no charge on her interest could be made or otherwise interfered with, very well, without prejudicing the rights of the husband.   The court of equity therefore took no control over it, and it was not called an equitable estate, but was regarded as a legal estate.

III. It is not material how the *feme sole's* estate was held, in respect to the person holding it, whether in her own right or by some one else in trust for her ; the point was, whether it was free from the control of her husband, that is, whether the husband had any interest in it.   It is undoubtedly true that before 1848 it must be held by some one other than herself, because, if she held it in her own right, that fact alone vested an estate in her husband ; and hence it could not be a *separate estate,* for the material quality necessary to make it *separate* was destroyed the moment the legal title vested in her own right ; so that formerly, in order to constitute it a *separate estate* within the equity rule, it must be held by some one other than herself, because this was the only way to prevent the husband taking an interest.   But the law in this particular has been changed by the statutes of 1848 and 1849, so that now, when the wife holds the estate in her own right, the husband takes no interest in the land whatever ; she therefore has a *separate estate* in the land, free from the control of her husband, within the meaning of the equity rule, and the estate must therefore be denominated an equitable estate, and liable to be charged in equity with this debt.   (*See Mr. Justice Harris' opinion in Chapman* v. *Lemon and Wife,* 11 *How. Prac. Rep.* 236.)

IV. A married woman cannot, as a universal rule, contract a debt charging herself personally ; but if she hold an estate *separate* from her husband, and *independent of him,* chancery considers her *separate* debt, incurred by her expressly, on her own account, as a valid charge *pro tanto,* or will at least enforce its collection separately, by fixing it as a lien upon the separate estate.   (*Gardner* v. *Gardner,* 22 *Wend.* 526.)   And thus she may incur a debt even to her husband, chargeable on her separate estate.   (*Id.*)

V. By the law of England and America, a married woman is

incapable, in any case, of becoming a party to a bill of exchange so as to charge herself with any obligation whatever, ordinarily arising therefrom. This results from her general disability to enter into any contract, under the common law; for, during the marriage, her very being or legal existence as a distinct person is suspended, or at least is incorporated or consolidated in that of her husband. There are certain exceptions recognized by courts of equity. (*Story on Promissory Notes,* 92.)

VI. A *feme covert* having a separate estate settled upon her, is liable in equity upon a bill accepted by her, though for the benefit of a third person. When a married woman borrowed money and gave her promissory note payable on demand with interest, on a bill filed against the husband, wife and trustees acting under a marriage settlement, it was decreed that the debt should be paid out of the rents and profits of the estate settled to her separate estate. And so when she gave a note jointly with her husband as a security for his debt. (*See Chitty on Bills, ed. of* 1839, *p.* 24, *and authorities there cited.*)

*J. N. Pomeroy,* for the respondent. I. Two causes of action have been improperly joined in the complaint. (1.) Assuming that, when properly stated, these causes of action may be joined, still in this complaint they are improperly mingled and not distinctly stated, which is a sufficient ground of demurrer. (1 *Whittaker's Pr.* 370. *Id.* 461, 462. *Durkee* v. *Saratoga R. R.,* 4 *How. Pr. R.* 226.) (2.) But these causes of action cannot in any wise be joined in one complaint. The complaint, in substance, states a cause of action for work and labor and materials, and demands judgment therefor against both defendants, husband and wife. It also states a cause of action for equitable relief, not against the wife personally, but in the nature of a proceeding *in rem* against her separate real property. These two causes of action do not come under subdivision 1 of § 167 of the code. They do not "both arise out of the same transaction, or transations connected with the same subject of action." Nor do they come under subdivision 2 of the same section. They do not both "arise out of contract

express or implied." But even if these two causes of action should be considered to fall under the subdivisions mentioned, still they are within the limitation contained in the last subdivision of § 167 ; for they do not " affect all the parties to the action." One cause of action only affects the wife, and the other only affects the husband, although judgment is asked against the wife. They "require different places of trial." The cause of action against the wife must be tried by a judge at special term, and cannot be tried by a jury, when the other cause of action must be tried before a jury at the circuit court. They are not " separately stated." (1 *Whittaker's Pr.* 369 *to* 375, *2d ed. and cases cited. Tompkins* v. *White, in point,* 8 *How. Pr. R.* 520.)

II. The facts stated in the complaint do not show that the plaintiff is entitled to the equitable relief prayed for against the property of the defendant, Mrs. Sarah Ann Currier. The complaint is framed upon the doctrine that a court of equity will charge a wife's separate estate with her debts created during coverture, where from her acts, directly or impliedly, there appears an intention to charge the estate. The doctrine fairly and broadly stated is this : that when a married woman has a separate estate entirely without the control of her husband, and entirely under her own control, limited for her sole and separate use, and during coverture she create debts by contract, which she expressly charges upon such separate estate, or impliedly by her acts evinces an intention to make such a charge, or if the debts be created for the express purpose of benefiting such separate estate, a court of equity will enforce the debt against the estate, by a proceeding virtually *in rem,* and not *in personam.* This doctrine is fairly to be deduced from the following authorities : *Jaques* v. *Methodist Church,* (17 *John.* 548 ;) *North American Coal Company* v. *Dyett,* (7 *Paige's Rep.* 9 ; *S. C.,* 20 *Wendell's R.* 570 ;) *Vanderheyden* v. *Mallory,* (1 *Comstock's R.* 452 ;) 2 *Story's Eq. Jur.* §§ 1397, 8, 1400, (*n.* 1,) 1401, *and cases cited in the text and notes.* (1.) The doctrine relied on applies only to a wife's equitable estate, held by her to her own use and under her own control, entirely free

from the claims and management of her husband, and does not apply to her legal estate held by her absolutely. All the reasons of the doctrine fail where it is applied to a wife's estate held by her in fee. The ground and reasons of the rule are submitted to be the following : The wife's separate estate is a mere creature of equity, designed expressly to relieve a wife from the strict rules of the common law, which did not allow her to contract so as to bind herself or her estate during coverture. (2 *Story's Eq.* § 1378.) A married woman who holds a separate estate may receive it from her husband, from strangers, or by devise. It must always come by purchase, as distinguished from an estate which comes by descent. It may be created by marriage settlement or otherwise ; it does not require strict words to create it, but it must appear that the estate conferred upon the wife was intended to be held by her to her sole and separate use, and free from the control of her husband. (2 *Story's Eq.* §§ 1379 *to* 1382.) Such being the nature of a married woman's separate estate as regarded in equity, it is plain from the doctrines of the common law that a creditor of the wife could have no relief against such property. To relieve this apparent injustice, equity interposes ; and equity only interposes, because in such case the law is powerless. (2 *Story's Eq.* §§ 1397, 8.) The books give two grounds for this equitable doctrine : the elder cases put it on the ground that a wife's separate estate, being a mere creature of equity, equity would regard her, in reference to such separate estate, a *feme sole*, and would therefore treat her property as if she were really single. (2 *Story's Eq.* § 1401, *and cases cited. Hulme* v. *Tenant,* 1 *Bro. Ch. R.* 16. *See also Murray* v. *Beekman,* 4 *Sim.* 82 ; 3 *Myl. & Keene,* 209 ; *and* 2 *Story's Eq.* § 1400, *n.* 1.) The modern cases put the doctrine on the ground that the wife's act of contracting the debt is evidence of an intention to charge her separate estate by appointment, or by contract in the nature of an appointment. (2 *Story's Eq.* § 1401, *and cases cited.*) Whichever ground or reason of the rule be adopted, it is plain that its only application is to the wife's separate or equitable estate, and not to her legal estate—not to

land held by her in fee. If we assume the old exposition of the rule to be the true one, there is no escape from our conclusion. Equity does not invade the rules of the common law. to the extent to regard a wife as a *feme sole*, in reference to her property generally, held by her absolutely in her own right; the very reason of this exposition of the rule is founded upon the fact, that the separate estate is held by her to. her own use as an equitable estate. Assume the modern construction to be correct, and rest the plaintiffs' claim upon the idea that the wife's contract is to be considered in the nature of an appointment. The very idea and meaning of an appointment has reference only to an equitable estate. Who ever heard, or how could it be possible, that the wife should execute a power by appointment over her real property of which she holds the fee; the idea is absurd. The only way in which a married woman can dispose of real property held by her absolutely in her own right, is, at the common law, by suffering a fine or recovery, and under our statutes, by a solemn conveyance. (2 *Story's Eq.* § 1391.) From this examination of the rule in equity, and of the reasons of the rule, it is plain that it only contemplates a wife's separate estate as such, as distinguished from the legal estate which she may hold in lands in her own right. Not a case can be found in which a wife's legal estate has been charged with her debt in this manner. All the cases show that the estate charged was an equitable one, held by the wife to her. sole and separate use, free from the control of her husband. But this direct point has been decided in a case in the court of appeals. The case (*Fireman's Insurance Co.* v. *Bay*) is first reported in 4 *Barb.* 407; the action was brought to foreclose a mortgage executed by the wife. The estate in her was a reversion in fee in her after a trust estate limited during the life of her husband. The court below applied the equity rule we have been considering, and held that the wife had a separate estate, and that her mortgage was an appointment. The case was carried to the court of appeals and this doctrine directly overruled. (4 *Comst.* 9, 11, 26, 27.) (2.) The plaintiff, upon her own showing, has a clear remedy against the husband at law, and equity will not

Colvin *v.* Currier.

interfere to help her reach the property of the wife. The contract of the husband and wife, stated in the complaint, is the contract of the husband. He is the person liable, and the plaintiff can obtain a judgment against him for the debt. This is an elementary principle of law. The complaint states an estate in fee in property, in the wife. The husband has a freehold estate in the wife's property held by her in fee, depending upon the continuance of their joint lives. If she have issue, then the estate in the husband continues during his life. This estate of the husband may be seized and sold upon execution against the husband, and the husband would take his life estate, and would be entitled to possession and the pernancy of the rents and profits. (2 *Kent's Com.* 130, *and cases cited.*) The plaintiff's remedy is to obtain judgment against the defendant, George W. Currier, and sell his life estate in his wife's real property, held by her in fee. (3.) The "Married Woman's Property Act" of 1849 does not affect the right of the plaintiff in this action. If the plaintiff claims that the statutes of 1848 and 1849 have here the effect to make all real estate of a wife such a separate estate as is contemplated by the equitable doctrine upon which this action is founded; in other words, if the plaintiff rests her rights on the operation of the statute, then she should have shown that the defendants are within the statute; she should have made affirmative allegations showing that the land came to the wife since the act, or that the defendants were married since the act. (*Benedict* v. *Seymour*, 11 *How. Pr. R.* 176.) Whatever may be the effect of the statutes in question, they do not turn the wife's legal estate into an equitable separate estate. The wife's estate is still a legal estate; she has no power to make contracts, or to do any act under the statute which she could not do under the common law, except that she can make a will. She cannot make a deed except with her husband's consent. In the language of the opinion of Mr. Justice STRONG, " As to her legal estate, all of the legal disabilities of a married woman attach to it." It is submitted, that even supposing that it must be conceded on the papers in this suit that these statutes apply to these parties, still these

statutes can in no way be construed so as to abolish the husband's estate by the curtesy.

E. DARWIN SMITH, J. If the premises on which the plaintiff's husband in his lifetime erected a dwelling house, at the request of the defendant Mrs. Currier and her husband, were the separate estate of Mrs. Currier, in the sense and language of a court of equity, there can be no doubt that such property would be liable for the payment of the plaintiff's debt, contracted as it was on the faith of the undertaking and agreement of Mrs. Currier, and for the benefit and improvement of her estate.

Since the decision of *Jaques* v. *The Methodist Episcopal Church*, in the court for the correction of errors, (17 *John.* 548,) the doctrine that a *feme covert*, with respect to her separate estate, is to be regarded in a court of equity as a *feme sole*, and may dispose of her property by appointment, or bind it by debts contracted for the benefit of the estate or for her own benefit, upon the credit of such separate estate, may in this state well be regarded as settled law. This doctrine has been since repeatedly applied in the courts of this state, and twice since has been reasserted by the court for the correction of errors; first, in affirming the decision of the chancellor, in the case of *The North American Coal Co.* v. *Dyett*, (7 *Paige*, 9,) and again, in the case of *Gardner* v. *Gardner*, (22 *Wend.* 526.) In the latter case Judge Cowen states the rule very clearly. He says, "If the wife holds an estate separate from and independant of her husband, as she may do in equity, chancery considers her in respect to her power over this estate a *feme sole ;* and although she is incapable of charging herself at law, and equally incapable in equity of charging herself *personally* with debts, yet I think the better opinion is, that separate debts contracted by her expressly on her own account shall, in all cases, be considered an appointment or appropriation for the benefit of the creditor, as to so much of her separate estate as is sufficient to pay the debt."

This right of disposition has been regarded as absolute, unless the wife was specially restrained by the instrument under which

Colvin *v.* Currier.

she acquired the estate, and except also that it was for some time doubted whether she could convey her separate estate by deed without the concurrence of her husband. This doubt is however finally solved by the decision of the court of appeals in *The Albany Fire Ins. Co.* v. *Bay,* (4 *Comst.* 9.) This doctrine is not questioned by the learned judge who decided this case at special term. The demurrer was sustained, not upon the ground that the plaintiff's debt would not be a charge upon the separate estate of Mrs. Currier, in equity, but on the ground that her estate was strictly a *legal* and not an equitable one. The learned judge says, " A merely legal estate of the wife, although under the present statutes of this state she may hold it to her sole and separate use, and convey and devise it as if she was unmarried, and the same is not subject to her husband's disposal, or liable for his debts, is not a separate estate, in the sense of those words, in the law relating to married women." It seems to be supposed by my brother STRONG that the acts of 1848 and 1849, in relation to married women, have created a separate estate absolute and unqualified in the wife as a distinct *legal estate,* to which the doctrine of courts of equity, in regard to the separate estate of married women, as above stated, does not apply. To this view of those statutes, and their force or construction, I cannot agree. The separate estate created by those statutes, I insist, is not without the jurisdiction of this court, any more than if it were the separate estate known to the courts of equity before the passage of those acts. The reason of the law applies to such estate, as much as if it were created by a marriage settlement, or a devise or conveyance to trustees for the benefit of a married woman. A *separate estate* belonging to a married woman should be considered the separate estate recognized by a court of equity, however acquired. A married woman is under the particular jurisdiction of this court, considered as a court of equity. She cannot be sued at law. This court disregards the disability of coverture, and treats her as a *feme sole* for her benefit; and it allows her to sue and be sued as such, in respect to her separate property. At the common law she could neither sue nor be sued, and scarcely had a single

recognized right, separate and apart from her husband, in respect to property. Her legal existence was deemed merged in his. She and her husband constituted one person.

The husband at common law was entitled to the personal property, including choses in action of his wife at marriage, and had a freehold interest in her legal estate. (*Co. Litt.* 351, *a and b. Clancey's Rights of Married Women,* 161.) These strict rules of the common law have been gradually relaxing, through the intervention of courts of equity, in modern times. Through marriage settlements, devises and conveyances in trust, upheld and enforced in courts of equity, the right of married women to have separate estates, independent of their husbands, has long been recognized.

The acts of 1848 and 1849, were statutes passed in furtherance of the policy of relaxing the strict rules of the common law in respect to married women. Those acts repeal the common law rules giving the husband a right to the personal property of the wife, and a freehold interest in her estate of inheritance, and subjecting the same to the payment of his debts. Those statutes are but the adoption of the equitable rules of this court considered as a court of equity, and applying those rules to all property of the wife, whether legal or equitable. These acts were designed to take away the marital rights of the husband in respect to such property of the wife. The evil complained of was the too great subjection of the property of the wife, at common law, to the control of the husband and his creditors. The remedy was to apply the rule of this court, in respect to the separate property of married women, to all property belonging to the wife. It is true the property is thus converted into a legal estate, but it is none the less a *separate estate, independent of the husband.* In respect to her separate estate in equity, the wife, we have seen, could be sued, and her estate charged with her debts. The acts of 1848 and 1849, although they allow the married woman " to hold to her sole and separate use, and convey and devise, real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as if she

was unmarried, and provide that the same shall not be subject to the disposal of her husband, nor liable for his *debts*," do not allow her to make contracts, except in respect to such property, and they do not allow her to be sued in courts of law. In respect to all other of her contracts they are void still, as at common law, and the contracts which she may make are only cognizable, and capable of being enforced, in a court of equity. So far as the courts of law are concerned, the disability of coverture still remains, in respect to all the contracts or property of married women.

It is, I think, a mistake to consider the jurisdiction which courts of equity in England and in this country have long exercised over the separate property of married women, as depending entirely upon the doctrine of trusts. But if uses and trusts were connected with the origin of this jurisdiction, it has been upheld for more than a century without respect to such origin. (*Story's Eq. Jur.* § 1380.) The civil law treats husband and wife as distinct persons, capable in a limited sense of contracting with one another and of suing each other, and of having separate estates and interests. (2 *Story's Eq.* § 1368. 1 *Fonb. Eq. B.* 1, *ch.* 2, § 6, *and n. A.*) A wife may in equity, in cases respecting her separate estate, be sued without her husband, although he is ordinarily joined, for the sake of conformity to the rule of law, as a nominal party, whenever he is within the jurisdiction of the court and can be made a party. (2 *Story's Eq.* § 1368.) This whole doctrine in regard to the separate rights of the wife is borrowed from the civil law. It was long since adopted in courts of equity. It is the chief basis upon which jurisdiction over married women rests, in this court; and this court has no right to relinquish such jurisdiction. The right to sue married women in respect to their separate property, as it exists in this court, is a very important right, and must be exercised until the legislature takes it away. This court never relinquishes jurisdiction once acquired, and this is a cardinal rule in chancery. (1 *Story*, § 64. 3 *Bro. Ch. R.* 218. 6 *Vesey*, 812. 7 *id.* 19, 21. 9 *id.* 468.) The acts of 1848 and 1849 contain no evidence of the intention of the

legislature to strip this court of its jurisdiction over married women or their estates, or to exempt the separate estate created under or by those acts from the equitable principles of this court as applied to the separate estates of married women; and to hold that such is their effect, is to place the separate legal estate of married women virtually out of the pale of the law; to create a species of property entirely new in the legal nomenclature, placing in the hands of married women a sword to be used as an instrument of fraud and dishonesty, instead of giving to them a shield against imposition and hardship in the exercise of the well known rights of the husband at common law.

But whatever may have been the object of the legislature, it is the duty of the courts of equity to continue to apply its principles of remedial justice to all cases, as they arise, within the just scope and reason of those principles, until the legislature expressly forbids such exercise of its powers.

The view which I have taken, I think, is sustained by the decision of the learned judge who wrote the opinion of the court in the case of *The Fireman's Ins. Co.* v. *Bay*, (4 *Barb.* 414.) Judge Parker there says, a "*separate estate* exists in the wife where the husband has no interest in her property and no control over it, and where it is not liable to the payment of his debts." And "if it be in fact a separate *estate*, I do not see that it is at all material to inquire how the estate was created." The estate of Mrs. Currier is clearly a *separate estate* in this sense; it is free from the control of her husband. My brother STRONG does not deny this, but says it is a *legal* estate. That makes it, I think, none the less a separate estate. It matters not, as says Judge Parker, "*how it was created.*" It is just as *separate*, as completely so, if a *legal*, as if it were an equitable estate. This decision was affirmed in 4 *Comst.* 9, and Judge Jewett, in describing or defining the *separate* estate, uses pretty much the precise language of Judge Parker. But Judge Pratt, in a dissenting opinion in that case, (page 27,) says that "Separate estates in married women which courts of equity recognized their right to dispose of as *femes sole*, are strictly equitable estates." This was doubtless so before the passage

Colvin *v.* Currier.

of the acts of 1848 and 1849. But that case arose before the passage of those acts, and was decided irrespective of them; and the case does not conflict in any respect with the view which I take of the effect of those acts. Judge Pratt does not mean to assert, I presume, that equity may not reach the separate estates of married women, when such estate shall actually exist, however created. Separate estates of married women, before the acts of 1848 and 1849, were necessarily equitable estates; for the wife could have no distinct separate legal estate, free from the control of the husband, and from the reach of his creditors. (*See also Willard's Eq. Jur.* 643.) Since the law, however, recognizes, as it now clearly does, under the acts of 1848 and 1849, a strictly legal separate estate in married women, without subjecting it or them to the ordinary jurisdiction of the courts of law, it seems to me that in this court, as a court of equity, it is a sufficient basis for jurisdiction over such property for the enforcement of debts for the benefit or on the credit thereof, that a *feme covert* is free from the disability of coverture, and may sue and be sued as a *feme sole*, in respect to her separate property. But aside from this basis of jurisdiction, the very existence of a court of equity furnishes another, upon original principles. The power of courts of equity in England, in early times, was principally applied to remedy defects at common law, and for the same reason which constitutes now the principal reason for their existence and interference, to wit, "that a wrong is done for which there is no plain and adequate and complete remedy in the courts of law."

If the property of the defendant, Mrs. Currier, cannot be reached to enforce payment of the plaintiff's debt, the plaintiff is clearly remediless, and a gross wrong and immorality is committed. Her separate estate has been increased largely in value, as the bill states, much beyond its original worth, in consequence of the work done and erection thereon made by the plaintiff's husband. If the legal estate were in the wife, as before the acts of 1848 and 1849, the husband would be liable for the debt, and his freehold interest in it might

have been sold upon execution. But now the plaintiff has no remedy at law, and a gross fraud is, or will be, perpetrated, unless this court can enforce payment of this debt from the estate which its consideration has benefited. It is part of the duty of this court to prevent acknowledged wrongs and to protect acknowledged rights when courts of law are inadequate to give relief, and to apply the comprehensive and expansive power of equitable principles to meet new exigencies as they arise, that the great principle of law and justice may be practically vindicated, in permitting no wrong to be without a remedy, and no injury to go unredressed

The point that two causes of action have been improperly joined, is not well taken.

The complaint is designed as a bill in equity to reach the property of the wife, and the husband was a proper party. Some of the allegations in it may be unnecessary, and too much may be asked in the prayer for relief; but enough is stated to constitute a good cause of action for equitable relief, and the rest may be disregarded as surplusage.

The order of the special term should be reversed, and the demurrers overruled, with leave to the defendants to answer on payment of costs.

WELLES, J. The argument of the appeal in this case was heard at the general term, held in March last. At that time my impressions were strongly in favor of the appellant. The case was held over for consideration until the following June term; when, finding my brethren unable to agree, and in view of the importance of the question involved, it was again held over at my request, to give opportunity on my part for further examination. Since then I have given the subject as thorough an investigation as I am capable of doing; which has confirmed my first impressions, and led to an entire conviction of the soundness of the views contained in the preceding opinion of my brother SMITH.

I agree with the justice who decided the case at special term, that a legal title to property in a *feme covert*, held by her un-

der the acts of 1848 and 1849, is not such a *separate estate* as the courts of equity had recognized and acted upon. Such separate estate was a provision for the wife's separate use and benefit, independent of her husband, in which he had no interest, over which he had no right of control, which was usually, though not necessarily or invariably, held by her trustee, and which she disposed of by way of appointment. She could not, at common law, hold the legal title to property, either personal or real, for the reason that during her state of coverture she and her husband were considered one person, and her identity, so far at least as the right to hold property was involved, was lost or merged in him. Hence, there was no way at law in which such separate estate of the wife could be reached to satisfy demands upon it, however equitable and just; and although they may have been created by her for her individual benefit and upon the credit of her separate estate. (2 *Story's Eq. Jur.* §§ 1366, 1367, 1368.) To prevent the great injustice which might otherwise arise, and inasmuch as the wife's creditors had not the means at law of compelling payment of her debts which she had contracted to pay out of her separate estate, courts of equity undertook to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they could be satisfied. (2 *Spence's Hist. of Eq. Jur. of Ch.* 324.)

The only difference between the separate estate of a married woman, as recognized and acted upon by courts of equity for centuries, and their title to property acquired or held under the acts of 1848 and 1849, is, that the former is an equitable and the latter a legal estate or title. They are equally inaccessible at law to creditors, and there is quite as much necessity and reason for applying the doctrine in question to the latter as to the former. Unless it can be done, there is no way of reaching the property of a married woman, held by her under the statutes referred to. And I can perceive no objection to doing it. It is simply extending an ancient and well established principle of equitable jurisprudence to a case clearly within the spirit of the principle.

It cannot be doubted, it seems to me, that if the rights, legal capacities and privileges of married women had been the same at common law as the statutes in question have made them, the rule in equity respecting the liability of their separate estates would have originally been made applicable to them both, in common. A case or state of things is brought into existence by the legislature clearly within the reason and necessity of the principle, and which, I entertain no doubt, should be made subject to its power and action. The question is so well and fully examined by Mr. Justice SMITH, that I deem any particular discussion of it in this place unnecessary. I am, therefore, in favor of reversing the judgment of the special term.

T. R. STRONG, J., dissented.

Judgment reversed.

