JOSEPH A. AINSLEY, Respondent, v. SUSAN B. MEAD, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1870.)

Proof that the husband bargained for the purchase of real property conveyed to and paid for by the wife, and also for a resale of the same by her does not establish his general agency for the wife respecting such property, nor show authority in him from the wife to improve it for her

The wife is not charged at law, for improvements made to her separate estate under the husband's contract therefor.

Nor is she, or her estate, chargeable in equity for such improvements, made under the husband's contract, where no fraud imputable to her has induced the person contracting with the husband to make them.

The dicta in *Colvin* v. *Cruise* (22 Barb., 371), on this point disapproved.

The wife's omission to disclose her ownership of the property on which the improvements are being made, with her knowledge, does not of itself render her liable; and this is so, although the husband has fraudulently represented to his employe that the property is his own.

Nor is the fact that after the contract was made with the husband, and while the work was proceeding under it, the wife made an unwritten promise to pay for the work, material upon the question of her liability.

The remedy against a married woman in equity, to charge her separate estate for her contracts is superseded by the statutory provision for judgment against her personally. (L. 1862, ch. 172, § 7.)

This court cannot create a lien by judgment upon real property in another state.

THIS was an appeal taken by the defendant from a judgment entered upon the report of a referee.

The complaint was for work, labor and services which the plaintiff claimed to have performed, and material which he claimed to have furnished for the defendant, a married woman, upon her separate real estate, while she was residing in this State, and it averred that the defendant had sold the property and had removed to the State of Indiana, where she resided at the commencement of the action, and owned in her own right, as separate estate, other real property, and it demanded judgment for the amount claimed; that it should be declared a lien upon the separate estate of the defendant; the appointment of a receiver and other specific relief.

The answer denied the allegations of the complaint, and averred that the services had been performed and materials furnished upon the individual contract of the defendant's husband, and set up various facts by means of which the defendant claimed payment of the demand by her husband.

The plaintiff proved that in December, 1851, he had negotiated with the defendant's husband in her presence, with reference to the erection of certain buildings upon premises, which the defendant's husband then stated that he owned; that the plaintiff contracted with the husband, supposing the latter to own the premises and intending to make the contract with him; that by the contract the plaintiff was to build the buildings after a plan made, subject to alterations by the defendant. He also proved performance of the contract, and that during the progress of the work the defendant at different times gave directions as to the work, and required many changes to be made therein, and stated that the property belonged to her, and that her money was building the house, and frequently promised the plaintiff to pay for the buildings; also that the defendant with her husband moved into the buildings erected before the completion thereof, viz., in the early part of the winter of 1852, and that the contract was completed in February, 1853. The plaintiff also gave in evidence a conveyance of the premises upon which the buildings were put up, from one Smith, to the defendant, bearing date January 28, 1851,

and proved by Smith, the grantor (under the defendant's objection), that the defendant's husband negotiated with him for the purchase of the premises, and transacted all the business connected therewith, up to the time of the conveyance; also a deed from the defendant and her husband of the same premises to one Knight, dated March 22, 1854, and proved by Knight, the grantee (also under the defendant's objection), that he had negotiated for the purchase of the premises with the defendant's husband, also under objection as irrelevant and immaterial, certain conveyances to the defendant of property in the State of Indiana; the plaintiff also introduced a deposition of Stephen P. Mead, the defendant's husband, in which it was sworn that the deponent was a resident of Indiana, and had been so for twelve years past, that he had employed the plaintiff to put up the buildings in question, without authority from the defendant to act for her, that the defendant's separate funds which she had received from her father's estate, were in part invested in the purchase from Smith; but that no part of such funds were used in the buildings put up thereon, but that the work was wholly contracted for by and performed upon the credit given to him, the said Stephen P. Mead. The plaintiff also introduced the deposition of the defendant to substantially like effect. And it appeared that the property purchased from Smith had been held by her as separate estate, and that she owned land as separate estate, in the State of Indiana, her place of residence.

The referee found, that the defendant had held and owned the premises purchased from Smith as part of her separate estate, that the buildings erected thereon by the plaintiff were so erected upon the employment of Stephen P. Mead, her husband, who was vested with full power and authority from her as her agent to make such employment, and that the buildings which greatly enhanced the value of the property, were occupied and used by the defendant, and were caused to be put up with the intention on the part of the defendant, to pay for the same out of her separate estate.

The referee also found that there was due and unpaid to the plaintiff the sum claimed in the complaint; he also found that the premises had been sold by the defendant in 1854, and that with the avails of the sale, she had purchased other premises in the State of Indiana, where she resided, and had resided for ten years, and which premises she owned and held as separate estate at the time of the report; and he found, as conclusions of law, that the plaintiff was entitled to recover the sum claimed by him against the defendant, and that the same should be declared a lien and charge on the real property of the defendant in Indiana, describing it; and that the plaintiff was entitled to execution thereon against the separate estate of the defendant, to be enforced according to the law and practice of the courts where the premises were situate.   He also found that the plaintiff was entitled to have a receiver in the action, and the defendant ordered and required to assign by sufficient conveyance to him her separate estate sufficient to pay the plaintiff's demand and costs.

Judgment was entered on the report as provided thereby, and the defendant appealed.

*W. A. Barden*, for the appellant.

*W. Woodbury*, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—MULLIN, P. J.   Before the passage of chapter 90 of the Laws of 1860, entitled "An act concerning the rights and liabilities of husband and wife," an action *at law* could not be maintained against a married woman upon any contract whatever; courts of equity had power to enforce against the estates of married women contracts entered into by them in relation thereto.

By section 2 of chapter 90 of the Laws of 1860, married women were authorized to bargain, sell, assign and transfer

their separate property, and to carry on any trade or business and perform any labor or services, and the proceeds of such property and earnings in such trade, or by such labor, were declared to be her separate property.

By section 3 of the same chapter, she was authorized to sell and convey her real estate and to enter into any contract in reference thereto, as if she was unmarried, and to enter into the covenants usually contained in conveyances of real estate, and the covenants thus entered into should bind her separate estate.

By section 7 of the same chapter, she was authorized to sue and be sued in all matters relating to her separate property, as if she were sole.

By section 7 of chapter 172 of the Laws of 1862, it was provided that a married woman may be sued in any of the courts of the State; and whenever a judgment shall be recovered against a married woman the same may be enforced by execution against her sole and separate estate, in the same manner as if she were sole.

By this legislation, a married woman is, as to her separate estate, relieved from all the restrictions imposed upon her by the common law, and is to be treated as if she was a *feme sole.*

All contracts made by her concerning her separate estate, bind her to the same extent, and are enforced in the same manner that they would bind or be enforced against a man if made by him.

In the case before us, it is not claimed that the contract for building the house was made with the wife personally, but it is claimed that it was made by the husband, as the agent of his wife, he being thereunto duly authorized.

The referee finds, as matter of fact, that the husband was the agent of his wife in managing the business of building and making improvements on her lands, and as such, employed the plaintiff to do the work, to recover the price of which the action was brought, and that she intended to pay for the same out of her separate estate, and to charge the same with the payment thereof.

If this finding is supported by the evidence, the judgment of the referee is right and must be affirmed.

The only direct evidence of the husband's agency is that of John V. Smith and Theodore Knight. The former testifies that he made the bargain for the sale of the farm with the husband, and was paid by him therefor. The latter testifies that the bargain for the purchase, by him, of the farm was made with the husband.

The agency of the husband in these two transactions does not establish a general agency for the wife, and most certainly not an agency to make a contract to erect a building on her land.

Several witnesses testify that while the plaintiff was doing the work Mrs. Mead said she would pay for the work; that it was her money that paid for it. Harriet Heywood testifies on one occasion Mrs. M. gave directions about hanging blinds. She wanted to have them taken out, and the plaintiff asked who was to pay for it. She said she would; the work was hers; she used to say it was her home; she expected to pay for the work; he, plaintiff, must fix the blinds as she wanted, for she expected to pay for it; she expected to pay for what work he did.

If the remark of Mrs. M., that the work was hers, is to be construed as equivalent to the statement that it was being done for her, then it might follow that she thereby adopted the contract of her husband as made for her benefit and on her responsibility.

Before giving this enlarged construction to this piece of evidence regard must be had to other evidence in this case.

1st. Mead and his wife both testify that she was not a party to the contract; that it was made by him not as agent, but for himself, upon his own responsibility, and to be paid for with his own means.

2d. The plaintiff testifies that he did not know when the contract for doing the work was made, that Mrs. M. owned or had any interest in the farm; but, on the contrary, she was present and heard her husband claim to be owner of it, after

the work was done and after, as plaintiff says, Mrs. M. had told him, that she would pay for it; that her money was paying for the work; instead of treating her as principal he settled with the husband, and took his individual note in payment of the balance due.

It thus appears that the plaintiff did not consider Mrs. M.'s insisting when the contract was made, that she should have the right to direct the manner of doing the work, nor her declarations as to her intention to pay, any evidence that Mead was acting as her agent in making the contract.

It is doubtless true that taking an agent's note in ignorance of the fact of agency does not estop the other party to a contract with him, from proceeding against the principal when discovered.

But unless the agency is clearly proved, the taking of a note from the agent operates as a payment of the debt. I cannot resist the conclusion that the fact of agency is not proved. If not, then the action cannot be maintained at law against Mrs. M. for the balance due for the work.

The next question is: Has the plaintiff a remedy against Mrs. M. in equity?

When valuable improvements are made on the lands owned by a married woman in her own right, it would seem to be morally right that she should be obliged to pay for them, to the extent of the benefit actually conferred, without regard to the consideration that they were made upon the responsibility of some other person, and without any agreement on her part to pay.

But when the party making the improvements is not induced to make them by any fraud imputable to the woman, I know of no principle of equity that will charge her or her estate with any part of the cost of such improvements.

The omission to disclose her ownership of the land on which improvements are proposed to be made, under an agreement with her husband or other person, is not of itself enough to subject her to liability for such improvements.

Ainsley *v.* Mead.

There is no law that prohibits a husband from making improvements on his wife's lands, out of his individual property, or on his personal responsibility; and when thus made, there is no reason either in morals or in law. for resorting to her or her property to obtain payment. She is to be held to no larger liability than would be her husband under like cir cumstances.

Some stress is laid on the fact that Mead, at the time the contract was made, for the work, claimed in presence of his wife, that he owned the farm, and her ownership was not disclosed. Because one man enters into a contract with another in the belief that such other owns property, whereby his pecuniary responsibility is largely increased, it affords no ground for prohibiting the true owner from asserting his title to such property.

If there was fraudulent representation or concealment, whereby the party was · induced to enter into a contract, equity might afford him relief. But in this case no such fraud is either charged or found, and we are not at liberty to help the plaintiff by resort to any such ground of relief. (*Corning* v. *Lewis*, 36 How., 425.)

In *Colvin* v. *Currie* (22 Barb., 371), the General Term, in the eighth district, held that a person making improvements on the separate estate of a married woman, at her request and that of her husband, has in equity a lien thereon for the work done and material furnished in making such improvements, the husband being insolvent. It is said by both of the learned judges, in their opinions, that when the work, &c., expended in making improvements on the separate estate of a married woman would be lost unless charged thereon, equity would enforce it as a lien upon such estate. I can find no authority for such a proposition. The mere hardship of the case cannot, in the absence of some obligation, be a ground for equitable relief. The wife, in that case, was clearly liable. She owned the property. She had capacity to contract in reference to it in equity, if not at law; and having contracted, her separate estate was bound.

In *Taylor* v. *Glensey* (22 How., 240), relief was granted upon substantially the same grounds.

In *Mattise* v. *Lillie* (24 How., 264), a lien was adjudged in favor of the plaintiff, it appearing that the husband had purchased the lumber, for the price of which the action was brought, falsely representing that he owned the premises on which the house was erected, and in which the lumber was used; that he was trusted for the lumber on the faith of such representation, and that the lumber was purchased by the husband with the intent on his and the wife's part that it should be used on her separate estate, and with knowledge on her part that it was obtained fraudulently, and she omitted to disclose her ownership to the plaintiff.

Without stopping to inquire whether the facts justify an inference of a fraudulent intent on the part of the wife, but assuming that they do, the case was probably rightly decided. But so far as the decision proceeds upon the proposition that the fraud was that of the husband, application of the property purchased to improvement on the wife's separate property and silence on her part as to her title to the land on which the improvements are made, are sufficient in equity to entitle the plaintiff to relief, I totally dissent from. No case is cited supporting the proposition, and I think none can be found.

The wife's estate would soon be swallowed up if such a doctrine should prevail. How can she guard herself against the fraud of her husband? The husband's apparent kindness and generosity to her would be the means of her ruin. It would be a neighborly kindness for the wife, whose husband was making improvements on her land, to inform those employed that she owned the property, and that he, and not herself, must be considered responsible for the work and material expended thereon; but where is the law that requires any such notice to be given? While she keeps clear of all fraudulent combination with her husband, and is guilty of no fraud herself, she has the right to insist that all who trusted the husband should resort to him for their pay.

Ainsley *v.* Mead.

In *Corning* v. *Lewis* (36 How., 425), it was held that the wife's separate estate cannot be charged with a debt fraudulently contracted by her husband or other person without her privity, sanction or adoption, although the materials for which .the debt was created went directly for the benefit of her separate estate with her full knowledge.

In the fifth district, in *Jewet* v. *Raidley,* it was held that the plaintiff, who had sold lumber to the defendant's husband to fence a lot on which he and the defendant lived, and for which he had a contract of purchase, was entitled to recover against her the price of such lumber, she having taken an assignment of the contract for the purchase of the land after the bargain for the lumber was made, and before the fence was erected. She saw the fence while it was being erected and promised the plaintiff to pay for the lumber.

I was a member of the court when this case was argued and decided. I did not then discover any ground on which the plaintiff could recover either at law or in equity, nor have I been able to discover any since. The hardship of the case furnishes, it seems to me, the only ground on which such a judgment could rest.

In this conflict of opinion, we must declare the law as we find it to be. If the property of married women is to be protected against the frauds of husbands and other relatives, it can only be done by holding them responsible for participating in such fraud, or being themselves chargeable with fraud, whereby the injured party has been led into parting with his property, to his injury and to their benefit.

The evidence as to the promise of Mrs. M., to pay after the work was begun, was wholly immaterial. The contract proved and relied on was with her husband as her agent, and not with her personally. If it was collateral to his, it was void by the statute of frauds, not being in writing.

The work being done under an express contract, the law will not imply a promise to pay for it.

When a right of recovery is barred by a statute of limitations or similar statute, and but for the statute an action

could be maintained and the party liable, after the statute barrier has taken effect, expressly promises to do the act, which the statute relieved him from performing, the moral obligation to perform the act, furnishes a sufficient consideration to support the promise, and the plaintiff is entitled to recover. But if the defendant was not liable on the original cause of action, an express promise will not be enforced, as the original consideration is not in such cases revived. (*Geer* v. *Archer*, 2 Barb., 420; *Nash* v. *Russel*, 5 Barb., 556; *Ingraham* v. *Gilbert*, 20 Barb., 151.)

If, however, Mrs. M. was liable, the judgment entered must be modified. It was manifestly the intention of the Legislature, by the acts of 1860 and 1862, to do away with the practice theretofore existing in actions against married women, and thereafter to require the same proceedings to be had against them as apply to actions against *feme sole*.

Before the passage of the act of 1862 married women could only be proceeded against in equity, and the judgment and execution were against their separate estates; not against them personally. By section 7 of the act of 1862, it was expressly provided that she might sue and be sued as a *feme sole*. As a *feme sole*, all reference to her property was unnecessary and irrelevant. Before the act of 1862 married women could not be sued in a justice's court, or any other court not having equitable jurisdiction, as it was in equity only, she was liable. By section 7 of the act of 1862, she may be sued in any court in this State. This provision makes her liable in courts of law upon her contracts, and by the practice of those courts, the judgment must be against her personally, and the execution must follow the judgment.

It is thus rendered manifest that, after the passage of the act of 1862, no distinction is permitted in actions to which women are parties, between those who are, and those who are not married. It follows that the judgment must be against the married woman personally.

It may be said that the act referred to does not take away the remedy in equity, but adds merely a remedy at law

Ainsley *v.* Mead.

against married women, and hence it is at the option of the plaintiff to pursue either remedy.

It is undoubtedly true, as a general proposition, that the jurisdiction of courts of equity is not taken away because courts of law are authorized to grant relief in cases in which the remedy had been exclusively in equity.

When, however, equity entertains jurisdiction over a class of persons or subject-matter of an action, because courts of law are either incapable of or prohibited from exercising jurisdiction in such cases, and the inability in the one case, or the prohibition in the other, is removed, the courts of law become the proper tribunal in which to bring actions for or against such persons, and in relation to such subject-matter, and the question whether courts of equity are thereafter to have jurisdiction in such cases is to be determined by the same rules that would determine it if the question of jurisdiction was now raised for the first time.

Convenience requires that actions against married women should be conducted in all respects the same as against *femes sole*.

I am unable to discover any ground for declaring the indebtedness a lien on the defendant's real estate in Indiana. It is beyond our jurisdiction. We cannot enforce the judgment. I apprehend it was never before suggested that the courts in our country could declare their judgments liens on lands in another country, and enforce them by sequestration of such lands. Such a practice would lead to the greatest abuses. The courts of a sister State might, if such were the law, cover the real estate in this State with liens, divest the title of the owners and place it in the hands of receivers. The defendants in such actions would have no chance for protecting their rights. If service of process may be made by publication, and a judgment binding the person of the defendant obtained, the defendant would learn of the proceedings for the first time when the receiver was at his door, clothed with authority to drive him from his home, and turn it over

to a stranger.   No government would tolerate for a moment such an interference with their rights.

It is suggested that the decree cannot be enforced directly against the land in Indiana, but it will be by proceedings against Mrs. M. for contempt for not obeying the requirements of the judgment.

It is wholly immaterial which of the two methods is adopted.   The judgment is enforced as a lien against land lying in another State, not according to their laws, but according to ours, wholly regardless of the forms of proceeding provided for the enforcements of liens in such State.

This I am quite confident cannot be done.

It has been held that an action for specific performance of a contract relating to lands in another State may be maintained in this State, because the court can enforce its decree by proceeding against the person of the defendant.   (*Sutphen* v. *Fowler*, 9 Paige, 280.)

The cases in which a court of equity in our own State or county may, by its decree, affect the title to lands in another State, are fraud, trust and contract, and in these cases only when the person of the defendant is within the jurisdiction of such court.   (*Morisey* v. *Watts*, 6 Cranch., 148.)

It would seem to be conceded in England that the courts in that country cannot sequestrate property in another, not even in the colonies.   (*Arglope* v. *Muschamp*, 1 Vern., 77, 135, and notes to former.)

It is obvious that the Court of Chancery in England has assumed to exercise a jurisdiction over lands in the colonies which it would not exercise over lands in countries independent of the British crown.   The decisions, therefore, of the courts of that country do not furnish safe precedents for us, unless when they are dealing with lands in no way subject to the dominion of England.   (Story on Conflict of Laws, § 544.)

The same learned author, in section 543, says a suit cannot be maintained against a person within the territorial jurisdiction of a court of equity, so as absolutely to bind his property

situate elsewhere, and *a fortiori* not so as absolutely to bind his rights and titles to immovable property situated elsewhere.

In the next sentence he denies the claims set up by some courts through a decree against the person to act upon and transfer the title to lands in another country.

When the courts of one country decree the specific performance or agreement to convey lands in another, the execution of a conveyance satisfies the decree. But, when the judgment declares a lien on land in another State, and directs its sale by a receiver appointed in this State, it assumes to displace the laws of the State in which the land lies, and to dispose of it under our own.

In any view of the case the judgment must be amended, by striking out all that declares it to be a lien on any specific land, and as appoints a receiver, and it must be made a judgment against Mrs. M. personally.

I am satisfied the judgment is wholly erroneous, and it should be reversed and new trial ordered, costs to abide event.

Judgment reversed.