THE FIREMEN'S INSURANCE COMPANY OF ALBANY *vs.* BAY and others.

At common law, a husband was required to join with his wife in executing a conveyance of her real estate.   Whether such is the law of this state, where the conveyance has been duly acknowledged by her as a *feme covert?   Quære.* But however that may be, the rule is not applicable in equity to a conveyance of her *separate property.*

To give validity to a mortgage executed by a married woman upon her *separate estate* and acknowledged by her as a *feme covert,* it is not necessary the husband should join in executing the same.

With regard to her separate property, a *feme covert* is to be regarded, in equity, as a *feme sole.*

A separate estate exists in the wife, where the husband has no interest in her property, and no control over it, and where it is not liable to the payment of his debts.

A separate estate may in some cases exist in a *feme covert,* though it has not been conveyed to a trustee, for her use.

In all cases where the wife has a separate estate, no matter how it was created, it may be made liable to the payment of her note or bond, given on the credit of it; and she has, in equity, the same power over it, and may sell it, or bind it by mortgage, as if she were a *feme sole.*

IN EQUITY.   This suit was commenced in the court of chancery, by bill filed before the late vice chancellor of the third circuit, for the purpose of foreclosing two mortgages on land lying in the city of Albany.   The land consisted of building lots, and was bounded on the south by Washington-street, on the west by Swan-street, on the north by Elk-street, and on the east by the house and lot formerly owned by Jabez D. Ham-

mond, excepting the house and lot on the corner of Swan and Washington-streets. The easternmost of the lots mortgaged, known as lot No. 1, was owned in her own right by Gertrude Treat, wife of Richard S. Treat. The interest of Richard S. Treat, being his life estate therein, had been sold under a judgment and execution against him, and bid in by Samuel Stringer, the father of Gertrude Treat, and devised by him to trustees for her benefit, as will be more particularly stated hereafter. Lot No. 2 was owned by Eliza Bay, wife of John W. Bay, and daughter of Gertrude Treat. Lot No. 3, with other real estate, had been devised by Samuel Stringer deceased, in his last will, to John Lansing, jun. and Samuel S. Lush, as trustees, for the benefit of Gertrude Treat, who were authorized and empowered by said will as follows: " from time to time to sell and dispose of such parts of my lands and tenements and real estate, in fee simple or otherwise, &c. &c. as my said daughter Gertrude by writing under her hand shall from time to time request or desire, and to pay over the proceeds and purchase moneys to my said daughter Gertrude, for her separate use, notwithstanding her coverture," &c. The rents of the real estate, and all moneys received by virtue of the trust, were directed to be paid by the trustees to Gertrude Treat during her coverture, " and to be paid into her proper hands and not to her present husband, for her sole and separate and peculiar use," and the same was declared not to be subject to the control or debts of her husband, and her receipt was declared a good and valid discharge for any moneys derived from the trust, notwithstanding her coverture. If she should die before her husband, the trustees were directed to apply the moneys derived from the trust to the use of her children, and if she should survive her husband, the trust was to cease, and all the property to belong to her. The life estate of Richard S. Treat in lot No. 1 purchased by Samuel Stringer, as above stated, was, by a codicil, devised to the said trustees, on the same trusts as the other real estate. It was further provided, by the will, that if one of the trustees should die a new one was to be nominated by the said Gertrude, and in case of her death, by the surviving trustee.

The Firemen's Insurance Company of Albany *v.* Bay.

After the death of Samuel Stringer, and on the 7th of April, 1824, Samuel S. Treat was substituted a trustee, by order of the court of chancery, in place of John Lansing, jun., and acted as such trustee until his death on the 29th of February, 1832; and by an order of the court of chancery, made on the 20th of May, 1832, John W. Bay was appointed trustee in his place. On the 9th of April, 1832, the plaintiffs loaned for the benefit of Mrs. Gertrude Treat, on the application of the said trustees, $8000 for the purpose of erecting buildings upon lot No. 1, which was then unproductive, and to secure the re-payment of the same, a bond was executed to the plaintiffs in the penal sum of $16,000, conditioned for the payment of $8000 and interest half yearly; which bond was executed by Samuel S. Lush and John W. Bay, trustees, and Gertrude Treat and John W. Bay and Eliza his wife. And at the same time, to secure the payment of the said sum of $8000 and interest, they executed to the plaintiffs a mortgage on the three lots of land above described. Both the bond and mortgage contained a written consent of Gertrude Treat that the trustees should execute the same. The mortgage was duly acknowledged and recorded, and the acknowledgment of Gertrude Treat was taken, apart from her husband, as required by statute. On the 22d of November, 1832, a further loan of $1500 was made by the plaintiffs, for the benefit of Mrs. Treat, for the purpose of completing the buildings erected on lot No. 1. And to secure the payment thereof another bond and mortgage upon the same premises were taken, in similar form, and executed by the same parties, except that by mistake the bond was not signed by Mrs. Treat. This mortgage, like the first, was duly executed and acknowledged by her as a *feme covert*. The above mentioned loans were made with the knowledge and approbation of Richard S. Treat, and on the representation that the lots mortgaged were the separate property of Mrs. Treat. The money was principally expended in erecting eight brick houses on lot No. 1; and it appeared by conversations between the secretary of the plaintiffs and Richard S. Treat and his wife, that it was the understanding that the rents re-

ceived from the houses should be applied in extinguishing first the interest, and afterwards the principal moneys loaned. During the lifetime of Richard S. Treat the interest on the mortgages was paid by John W. Bay, for Mrs. Treat; and Richard S. Treat and his wife frequently inquired at the plaintiffs' office to see if the interest was paid. After the death of Richard S. Treat indulgence was asked, and the interest was paid, on one or two occasions, by Mrs. Treat. Mrs. Treat died in March, 1837, and after her death John W. Bay substituted his own note, as her administrator, for one she had given for interest, after her husband's death. Eliza Bay, her heir at law, died in May, 1837, leaving as her heirs at law three infant children, viz. Richard L. Bay, William A. Bay and Anna Bay; and they, together with John W. Bay, their father, were made defendants in this suit. The bill was taken as confessed as to John W. Bay. The infant defendants, by their guardian ad litem, put in a general answer.

The vice chancellor of the third circuit made a decree directing the foreclosure of the mortgages, and for the sale of the mortgaged premises, in the usual form, from which decree the defendants appealed.

*P. Gansevoort*, for the plaintiffs.

*D. McMartin*, for the defendants.

*By the Court*, PARKER, J.  No question arises for our determination, as to lot No. 2. That was owned by Mrs. Eliza Bay, in fee, and the mortgage being executed by her and her husband, and duly acknowledged by her as a *feme covert*, created a valid lien on that lot. But it is contended, on the part of the defendants, that the mortgage is void as to the other lots, on the grounds that Richard S. Treat did not join with his wife in the mortgages, and that the trustees were not authorized to execute such mortgages. The first ground is the one principally relied on by the defendants' counsel, and is controlling as to lot No. 1, on which the buildings were erected, and which lot constitutes the chief security for the money

The Firemen's Insurance Company of Albany *v.* Bay.

loaned; for as to that lot, the fact that the trustees of Mrs. Treat joined in the mortgage will not now aid the plaintiff. Mrs. Treat originally owned the fee of that lot, as heir at law of her mother, and the trustees held only the life estate of Richard S. Treat, which had been sold under a judgment and execution against him, and had been bid in by Samuel Stringer, and by him devised to the trustees, for the separate use of Mrs. Treat. But on the death of Richard S. Treat all the interest that had been held by the trustees and mortgaged by them to the plaintiffs ceased, and the plaintiffs can only rely now, for security, upon the fact that the mortgage was executed by Mrs. Treat herself. If the execution and acknowledgment by her constitute a valid conveyance, then the plaintiffs' lien is still operative. If not, the lien terminated on the death of Richard S. Treat.

The defendants' counsel claims that it was a rule of the common law that the wife could not convey by deed unless the husband joined in the conveyance, and that such is the law of this state. The general common law rule is laid down to be, that the husband must be a party with the wife to her conveyance; but if she levy a fine as a *feme sole*, without her husband, though it will be good as against her and her heirs, the husband may avoid it during coverture, for the benefit of the wife as well as for himself. (2 *Kent's Com.* 151. *Perkins*, § 20. *Shep. Touch. by Preston*, 7. *Bro. Abr. Tit. Fines*, pl. 75.) At common law a feme covert could convey her real estate in no other way except by fine or a common recovery. Yet such has not been the law in this state; for although fines and common recoveries were not abolished here by statute till 1830, (2 *R. S.* 343, § 24,) it had always previously been the practice for a married woman to convey by deed. Under the government of the colony of New-York, a *feme covert* conveyed by deed, upon the usual acknowledgment before a competent officer; and by the act of February 16, 1771, such previous conveyances were confirmed. And as to future conveyances it was enacted that no estate of a *feme covert* should thenceforth pass by deed, without a previous acknowledgment

made by her, apart from her husband, and on a private examination, that she executed the same freely and without any fear or compulsion of her husband. (*See Colonial Acts*, 3 *R. S. 1st ed. p.* 22.) This act prescribing the form in which the deed of a *feme covert* should be acknowledged, has been substantially continued to the present time, by the acts of February 26, 1788, (2 *Greenl. Laws*, 99, § 3,) April 12, 1813, (1 *R. L.* 369,) and by the present statute, in force when this mortgage was executed. (1 *R. S.* 758.) It was said by Justice Bronson, in *Bool* v. *Mix*, (17 *Wend.* 128,) "it seems to have been assumed that we had not adopted the common law rule, and that the deed of a *feme covert* was effectual to pass her interest in lands." (*See also Meriam* v. *Harsen*, 2 *Barb. Ch. Rep.* 267.)

None of the acts above cited make any distinction between a deed executed by a *feme sole* with her husband, and one executed by her alone, and it is argued that the language used implies that a deed executed by a feme covert, alone, and properly acknowledged, is valid. The statute is as follows : " The acknowledgment of a married woman residing within this state, to a conveyance purporting to be executed by her, shall not be taken, unless in addition to the requisites contained in the preceding section, she acknowledge on a private examination, apart from her husband, that she executed such conveyance freely, and without any fear or compulsion of her said husband; nor shall any estate of any such married woman pass by any conveyance not so acknowledged." It is only when she resides out of the state that she is required by statute, " to join with her husband " in the conveyance of any real estate, situated within this state, and in such case she is permitted to acknowledge the deed as if she were *sole.* It is provided by statute that if a married woman executes a power by grant, her husband need not be a party to the conveyance, but it shall not be valid unless acknowledged by her as a *feme covert.* (1 *R. S.* 736, § 117.)

It has never been judicially settled, in this state, whether a husband must join the wife in a conveyance, to give it validity. It seems to have been taken for granted, by Ch. J. Spencer, in *Jackson* v. *Vanderheyden*, (17 *John. Rep.* 167,) and by Justice

Bronson, in *Gillett* v. *Stanley*, (1 *Hill*, 125,) that such was the rule. But in neither of those cases was the question presented for adjudication. It is said by Chancellor Kent, in 2 *Kent's Com.* 153, that the question is still undetermined, in this state. In some of the neighboring states, exceptions to the common law rule have been recognized. In New Hampshire, the wife may release her right of dower, by a separate deed executed by her without her husband. (2 *New Hamp. Rep.* 176, 405.) In Maine, it has been held that the wife may, by her separate deed, release her right of dower, to the grantee of the husband. (*Rowe* v. *Hamilton*, 3 *Greenl.* 63.) And such is the law of New Jersey. A different rule, however, has been held in Massachusetts, (*Powell* v. *Monson and Brimfield Man. Co.* 3 *Mason*, 347 ; *Hall* v. *Savage*, 4 *Id.* 273,) and also in Rhode-Island, Virginia and other states.

The reason assigned why the husband was required to join with his wife in the conveyance was that his assent might appear upon the face of it, and to show he was present to protect her from imposition. (2 *Kent's Com.* 152.) But when, as in this case, the assent of the husband is clearly shown, and the transaction was greatly to the advantage of the feme covert, such a practice seems no longer necessary for her protection. But whatever may be the common law rule on this subject, there are, in equity, exceptions to its operation, long recognized and well established. It is abundantly settled by authority that with respect to her separate property a *feme covert* is to be regarded in equity as a *feme sole*. (*Murray* v. *Barlee*, 4 *Simons*, 82. *Willats* v. *Cay*, 2 *Atk.* 67. *Clerk* v. *Miller*, *Id.* 379. *Norton* v. *Small*, 2 *P. Wms.* 144. *Hulme* v. *Tenant*, 1 *Bro. C. C.* 16. *Heatley* v. *Thomas*, 15 *Ves.* 596. 18 *Id.* 258. 3 *Mad.* 387.) In *Jaques* v. *The Methodist Episcopal Church*, (17 *John. Rep.* 548,) this doctrine was fully sustained, and the court for the correction of errors there decided that where a trustee held property for the separate use of a *feme covert*, she might dispose of it, even without the consent or concurrence of her trustee, unless specially restrained by the instrument under which she acquires her separate estate ; and that though a par-

ticular mode of disposition be specifically pointed out in the instrument or deed of settlement, it would not preclude her from adopting any other mode of disposition, unless there were negative words restraining her power of disposition excepting in the very mode pointed out. This equitable doctrine has been repeatedly applied by the courts of this state. (*North American Coal Co.* v. *Dyett,* 7 *Paige,* 14, *affirmed* 20 *Wend.* 570. *Gardner* v. *Gardner,* 7 *Paige,* 112. *Knowles* v. *McCamly,* 10 *Id.* 346. *Mallory* v. *Vanderheyden,* 4 *Legal Observer,* 4, *affirmed on appeal to the chancellor. Guild* v. *Peck,* 11 *Paige,* 475.) Most of the English cases, however, as well as those in our own courts, are where the separate estate was created by deed or by devise, and held by trustees for the benefit of the *cestui que trust.* But the principle is equally applicable to every separate estate. A *separate estate* exists in the wife where the husband has no interest in her property and no control over it, and where it is not liable to the payment of his debts. And if it be in fact a *separate estate,* I do not see that it is at all material to inquire how the estate was created. It is not denied that so far as the husband's life estate, in this case, was concerned, it had become the separate estate of the wife by the sale under the judgment and execution, and the devise to trustees for her use. Her remaining interest in the land was one over which the husband never had any control; in which he had no interest, for the enjoyment of it could not commence till his death; and which was never liable for his debts. Mrs. Treat's interest in it was as exclusive, and as perfect, as if it had been devised to trustees for her benefit, like the life estate. ᾽I concede that no reported case can be found, and no instance perhaps ever occurred, where a separate estate was created in the manner in which the entire property in lot No. 1 was in this instance vested in Mrs. Treat; but I know of no other mode in which an estate can become more entirely separate than was hers in the property in question.

To enable the wife to have and hold a separate estate, it is not necessary that it should be conveyed to a trustee, for her use, (*Story's Eq.* § 1380,) though such is the usual practice;

and the intervention of a trustee was once deemed indispensable. The wife may carry on a trade, by an agreement between her husband and herself, made either before or after marriage ; and a court of equity will in some cases protect her income and profits as her separate estate. (*Story's Eq.* § 1392, *and the cases there cited.*) And though gifts and grants from husband to wife are ordinarily void, at law, yet a court of equity will in many cases uphold them and protect her separate property under them, as well as in property given and granted to her by a stranger, for her separate use. And in all cases where the wife has a separate estate, no matter how it was created, it may be made liable to the payment of her note or bond given on the credit of it, and she has, in equity, the same power over it, and may sell it or bind it by mortgage, as if she were a *feme sole*. I think, therefore, a court of equity cannot hesitate to declare lot No. 1 the separate estate of Mrs. Treat, and bound by the mortgage executed by her to the plaintiffs.

As to lot No. 3, there is still less question. The estate of Mrs. Treat in that lot was created by the devise of Doct. Samuel Stringer, who placed it in charge of trustees for her separate use, and made it subject to her unlimited direction and control. I think the acts of the trustees, in executing the mortgage, were clearly within the powers conferred on them. But however that may be, the right of Mrs. Treat to bind it by the execution of the mortgage, as held in *Jaques* v. *The Methodist Episcopal Church*, above cited, cannot be controverted.

The view I have taken of this case renders it unnecessary to inquire whether the acts of Mrs. Treat, after the death of her husband, were a ratification of her engagements made during coverture. Independent of that question, I think the mortgage a valid and subsisting lien on all the lots described in it. The plaintiffs are therefore entitled to the usual decree of foreclosure ; and the decree of the vice chancellor must be affirmed, with costs.