## PHILLIPS VS. GRAYSON.

Gift of a slave, by a mother, to a trustee, for the use and benefit of her daughter, a married woman, and the heirs of her body—to be held by the trustee for her use and benefit—to remain hers during her life, and at her death to go to the heir of her body—to remain in her possession, but not to be subject to the debts or disposition of her husband. The husband died, the wife married again; and the judgment creditors of the second husband levied upon the slave : *Held*, on bill by the wife to enjoin the sale of the slave, claiming it to be her separate property, that from the terms of the deed of gift, being but for a life interest, and appointing a trustee, even without the words that free the property from the disposition of the husband and from his debts, the life interest of the wife was her sole and separate property : That the property was subject to absolute disposition by her, to the extent of her interest, while she was a widow. That when she entered into the second marriage, the slave continued her separate property not subject to the control of her second husband, nor liable for his debts.

*Appeal from Clark Circuit Court, in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

GARLAND & RANDOLPH, for appellant.

GALLAGHER, and KNIGHT, for appellees.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

Amy Calloway, in consideration of the love and affection that she had for her daughter, Charity C. Johnson, wife of Philip P Johnson, conveyed to Jonathan O. Calloway, Rebecca, a negro girl, "in trust for the use and and benefit of the said Charity C., "and the heirs of her body. .... To have and to hold said "slave and all her increase, unto the said Jonathan O., for the

49

" use and benefit aforesaid, but to remain the said Charity C.'s
" during her life, and at her death to go to the heirs of her body;
" and it is now expressly understood, and here stipulated, that,
" from this day forward, the said negress is to be and remain in the
" possession of my beloved daughter, Charity C., but to be in no
" wise subject to the debts or disposition of the said Philip P.,
" the husband of my said daughter, Charity C." This deed was
made the 30th of July, 1845, and was recorded, at the proper office,
in Clark county, upon the next day. In course of time, Johnson, the
husband, died, and Mrs. Johnson married Phillips. Judgments
had been rendered against Phillips, and, at the instance of the
plaintiffs, executions isued upon them were levied upon Rebecca
and her children. Mrs. Phillips, claiming the negroes as her own
separate property, exempt from liability to the debts of Phillips,
her second husband, filed the bill in this case to enjoin the judg-
ment creditors from attempting to subject Rebecca and her chil-
dren, to the satisfaction of their judgments; and that a trustee
in the place of Jonathan O. Calloway, then dead, should be ap-
pointed to preserve and perform the trust. A preliminary injunction
was granted, but, upon demurrer, the Circuit Court of Clark
county, sitting in chancery, dismissed the bill; from which decree
Mrs. Phillips has appealed to this court. She insists here that,
under the general doctrine recognized in chancery, and under
our married woman's law, the negroes are her own separate pro-
perty, and that the decree appealed from is erroneous, in not
affirming her claim: while, on the other hand, the judgment
creditors, the appellees, sustain the decree, and maintain the nega-
tive of the two propositions of Mrs. Phillips, the appellant.

The married woman's law, if applicable to the claim of the
appellant, gives her no better position in this case than she would
have by the doctrine of courts of equity upon separate property:
hence the decision of this case need not involve a consideration
of our statute, but will be made to depend upon the negroes
mentioned in the bill, being vested in the appellant to her sole and
separate use, free from the liabilities of her second husband.

It seems to be admitted by the appellees, for the purposes of

this case, that the deed of Amy Calloway conveyed an interest to her daughter, that was separate in her favor as against Johnson, the existing husband: but as this point may have an important bearing upon the rights, and consequently upon the liabilities of the second husband, without placing our decision upon an admission made, with the view that its principle would not extend to the second husband, we will give an opinion upon the deed itself: which is, that Mrs. Johnson took an interest in Rebecca, that was free from liability or interference of Johnson, the first husband. But whether this results from that part of the deed which expressly refuses to Johnson any right over the slave, is a question made by the opposing counsel, and one upon which they suppose the case will turn.

The appellant contends that, without the clause in the deed which mentions Johnson, the other words exclude his interest, as well as that of any other husband, and that this effect of the words is strengthened by the interest of Mrs. Johnson and her children being preserved for them by a trustee, and by the limited interest provided for Mrs. Johnson. The appellees insist that the interest conveyed to Mrs. Johnson is not affected by the intervention of a trustee; that the deed confers upon her the absolute ownership of Rebecca and her increase; that the gift to her use and benefit is only an unconditional gift; that upon the death of Johnson the property belonged to his widow, without any separate character; that her marriage to Phillips transferred the property to him, and that, consequently, his creditors, the appellees, had a right to make their judgments out of the slaves, from which they are hindered by the injunction granted in this case, and by the prosecution of this appeal.

In ascertaining the effect of the gift, from a fair construction of the instrument, the evident intention of the donor was, that Rebecca, and her increase, should belong to the daughter for her life, and after her death should go to her children, and that the possession and enjoyment of Mrs. Johnson, should be as of her own separate property, as long as she should live. From the bare words of the deed, it is plain that a separate interest was con-

ferred upon Mrs. Johnson, as her husband was excluded from all interest in, or control over, the property, which was also exempted from liability for his debts. *Firemen's Ins. Co. vs. Bay*, 4 *Barb.* 414. Yet, without the express, exclusive words against Johnson, the terms of the gift alone, if an absolute interest had been conferred upon Mrs. Johnson, might not have been sufficient to have created a separate estate under the modern English rule of decisions, which has been followed by this court. *Roane vs. Rives*, 15 *Ark.* 330; *Kensington vs. Dolland*, 2 *M. & K.* 184; *Tyler vs. Lake*, 2 *R. & M.* 183. This rule seems, at times, to have been applied when the principle for the construction of all writings, that of effectuating the intention of the instrument, if not inconsistent with the rules of law, did not require its application. For the spirit of the law, as well as the letter of the authorities, would teach that no particular form of words is necessary to vest property in a married woman for her separate use. *Stanton vs. Hall*, 2 *R. & M.* 175; *Clark vs. Maguire*, 16 *Misso. R.* 311; *Taylor vs. Stone*, 13 *S. & M.* 655. And those cases that hold there must be negative words to destroy the marital rights of the husband, or that a different and stronger rule of construction may be adopted to preserve such right, are subject to the pertinent observations of Vice Chancellor WIGRAM, made in *Blacklow vs. Laws*, 2 *Hare*, 49, 54, in which, in obedience to authority, since overruled, he construed a will in a way he deemed to be against the real intention of the testator.

The strict English rule does not seem to have been followed in some of the American courts, which follow the intent, irrespective of any particular words to establish the character of the estate. Such are the Missouri and Mississippi cases, above cited, and to the same effect are *Hamilton vs. Bishop*, 8 *Yerg.* 40, and *Beaufort vs. Collier*, 6 *Humph.* 490.

But, in this case, only a life estate was given by the deed to Mrs. Johnson, the residuary interest being vested in the heirs of her body. *Cox vs. Britt*, 22 *Ark.* 557. The decision in *Lindsay vs. Harrison*, 3 *Eng.* 311, is not applicable to the present case, as the estate in that case was held to be an absolute estate of a

single woman, with no attempt to exclude the marital right of a future husband; while this case is the conveyance of a life estate to a married woman, with a remainder to her children: thus restricting the right of alienation of the property itself, as fully as any prohibitory clause of anticipation can possibly do. All the authorities note the distinction between an absolute and partial interest, when the question is, whether the interest be separate property, or subject to a husband's claim. The remark made of *Lindsey vs. Harrison,* may also be extended to *Sadler vs. Bean,* 4 *Eng.* 202, and to *Roane vs. Rives,* 15 *Ark.* 330, the terms of the will, in the former case, having nothing to show that the creation of a separate estate was intended, while the terms of the gift in the latter case bestowed an absolute gift in terms for the use of a daughter; which this court held to be an executed trust, that is, an absolute, unconditional gift to the wife, which, of course, vested the property in the husband.

In the two cases last remarked upon, as in this case, there were trustees; but unlike the present case, in them there was nothing for the trustee to do, the trusts being finished as soon as made; whereas in this case, the trustee was to hold the legal interest, guard it for Mrs. Johnson against her husband, and after her death to pass the property to her childen. That a trustee is appointed will not create a trust, and that a trust may arise without a trustee, are new maxims in equity; and to these doctrines the observations in the opinions in *Sadler vs. Bean,* and *Roane vs. Rives* relate, and must be confined; for it cannot be denied that the appointment of a trustee is a fact to be taken into consideration, in ascertaining whether the intention of the person from whom the settlement proceeds, be to confer a legal, or a trust estate. In the language of LORD ELDON: "The intervention of trustees has never yet gone the length of vesting a sole or separate estate in the wife." *Lamb vs. Milnes,* 5 *Ves.,* 521; but that which by LORD COWPER was deemed essential to support a trust (*Harvey vs. Harvey,* 1 *P. W.,* 125,) should not be overlooked as an important fact in determining upon the intention with which an alleged trust is created.

We have examined with much care the words of the will in *Maulding vs. Scott*, 13 *Ark.*, 88, and the charge in the bill in *Denson vs. Thompson*, 19 *Ark.*, 69, and the conclusions of this court in those cases. But the present case does not call for any remark upon those cases, as the terms of the gift and the facts of the case, are stronger than were the facts in those cases, to show an intention to create a separate estate. We have no doubt that this case falls within the principle of *Cox vs. Britt*, and that the principle properly applied in that case, should control this case. From the terms of the deed of gift of Mrs. Calloway, and from the interest of Mrs. Johnson under the deed being but for her life, and from the appointment of a trustee to preserve that interest, without the words that free the property from disposition by Johnson, and from his debts, we are of opinion that the life interest of Mrs. Johnson was her sole and separate property.

It is now to be seen whether Rebecca and her increase, which were the separate property of Mrs. Johnson while her husband Johnson was alive, remained such after she married Phillips, for whose debts the appellees are seeking to subject the property.

It is argued, for the appellees, that, though there were a separate estate in Mrs. Johnson, when she became a widow the property became her's absolutely, and that her subsequent marriage to Phillips operated as a transfer of the property to him. Marriage is not necessarily a gift of all the personal property and rights which the wife owns at the marriage; for her *chattels real* and *choses in action* do not belong to the husband till he makes sale, or reduces them to possession. And as separate property, in a married woman, is an interest or estate not known to, or not recognized by the common law, it is not subject to the incidents which the common law attaches to property, unless by the assent of courts of equity. For nothing is plainer than that an estate or interest created by equity, and that in violation of the common rules of property, must be subject to the rules which courts of equity adopt for its preservation, as well as for its creation. Against the principle of the common law, that does not allow a married woman to hold property independent of her hus-

band, courts of chancery permitted this to be done, but required the legal title to be vested in a trustee. Then in *Bennet vs. Davis*, 2 *P. W.*, 316, it was first held that property to the separate use of a married woman, should be preserved to her, though there was no trustee appointed, and that the husband, in whom was the legal title, should hold it in trust for the wife. So, it has been decided in modern times, that separate property could only be held as such against a named or contemplated husband, hence, settlements upon a single woman, to her own use, exclusive of the right of some future but unknown husband, were said not to create such equitable interests as courts of equity recognized as made for the protection of women already married and about to marry. The same rule of construction was followed respecting settlements made after marriage, or in contemplation of a particular marriage, holding them good for that marriage, but not for any other. *Barton vs. Briscoe, Jacob R.*, 603; *Woodneston vs. Walker*, 2 *R. & M.*, 197; *Jones vs. Salter*, 2 *R. & M.*, 208; *Brown vs. Pocock, ib.*, 210; *Newton vs. Reid*, 4 *Sim.*, 141; *Knight vs. Knight.* 6 *Sim.*, 121; *Benson vs. Benson, ib.*, 126; *Bradley vs. Hughes*, 8 *Sim.*, 149; *Massey vs. Parker*, 2 *M. & K.*, 174.

But this course of decision was vehemently opposed by counsel, in each succeeding case, as being contrary to law, and to the practice of conveyancers, by whom, in framing settlements and wills, universal provision was made for a single or married daughter, or relative, against the control and liability of future husbands, and this was so declared from the bench. *Davis vs. Morneycroft*, 6 *Sim.*, 420.

These and like decisions came under the consideration of Lord Langdale, Master of the Rolls, in 1838, when, in a most satisfactory opinion, he departed from their principle, holding that property given to a woman for her separate use, might be enjoyed by her during coverture, as her separate estate, no matter when the property vested in her, and that when given without the power to alienate, she could not sell or assign it during coverture, although while single she could dispose of it as she pleased;

the restriction to sell, or anticipate, shifting with her condition; being good when she might be a married woman, and being void when single, or discovert. *Turlett vs. Armstrong*, 1 *Beavan*, 1, and *Scarborough vs. Borman, ib.*, 34. These decisions were appealed from, and LORD COTTENHAM, who, as Master of the Rolls, had decided *Massey vs. Parker*, the strongest of the cases holding a different doctrine, as Chancellor, affirmed them; and the law in England has ever since been too well settled to be shaken. The importance of the subject, the character of the Judge and the effect of the case, justify the following quotation. After a full review of the authorities, the opinion proceeds: "Such is the " state of the authorities upon this very important question. It " is said to have been generally understood in the profession, that " the separate estate would continue to operate during a subse- " quent coverture, and that conveyancers have acted so exten- " sively upon that supposition, that very many families are inter- " ested in the decision of this question. That circumstance ought " to have great attention paid to it.

"　.　.　.　I have over and over again considered this sub- " ject, with a great anxiety to find some principle of property, " consistent with the existing decisions, upon which the preserva- " tion of the separate estate during a subsequent coverture could " be supported. I have been anxious to find means of preserving, " not only to maintain those existing arrangements which have " proceeded upon the ground of its validity, but because I think " it desirable that the rule should, if possible, be established for " the future, believing, as I do, that when a marriage takes place, " the wife having property settled to her separate use, all the par- " ties in general suppose that it will continue during the cover- " ture. To permit the husband, therefore, to break through such " a settlement, and himself to receive the fund, would, in general, " be contrary to the intention of the parties, and unjust towards " the wife.　.　.　.　After the most anxious consideration, I have " come to the conclusion that the jurisdiction which this court " has assumed in similar cases, justifies it in extending it to " the protection of the separate estate, with its qualifications

" and restrictions attached to it, throughout a subsequent cov-
" erture; and resting such jurisdiction upon the broadest foun-
" dation, and that the interests of society require this to be
" done. When this court first established the separate estate,
" it violated the laws of property as between husband and
" wife, but it was thought beneficial, and it prevailed. ·

" . . . It is, no doubt, doing violence to the rules of property,
" to say that property, being given with qualifications and restric-
" tions, which are held to be void, belonged absolutely to the wo-
" man up to the moment of her marriage, shall not be subject to
" the ordinary rules of law, as to the interest which the husband
" is to take in it; . . . . but it is not a stronger act to pre-
" vent the husband from interfering with such property, than it
" was originally to establish the separate estate, or to maintain
" the prohibition against alienation." *Tullett vs. Armstrong*, 4
*M. & C.* 404.

In the foregoing case, the gift took effect when the woman was
single, and she afterwards married, and that marriage is the sub-
sequent coverture alluded to in the opinion, and the questions
were, whether property could be given to the separate use of an
unmarried woman, and if so, whether it could be disposed of
against a prohibition in the settlement. The first of the questions
only, was involved in *Scarborough vs. Borman*, which was also
affirmed, the cases being reported together. The principle now
settled in England by the forgoing cases, has the full sanction of
American authorities. 2 *Kent* 170, *note a;* 2 *Story's Eq. S.* 1384;
*Shirly vs. Shirley* 9 *Paige* 364; *Beaufort vs. Collier,* 6 *Humph.*
491.

Since the first exercise of chancery jurisdiction over this sub-
ject, it has never been doubted, that property could be settled to
the separate use of a married woman, and when it was determined
that this could be done to a single woman, with the effect of bar-
ring the right of a future husband, with whom no marriage was
contemplated, it must inevitably follow, that property settled to
the separate use of a married woman, remains stamped with that
character when she takes another husband.

As in this case, we have held that Mrs. Johnson was invested with a separate life interest in Rebecca and her increase, this property, although subject to absolute disposition by her when she was a widow, to the extent of her interest, was her separate property when she entered into another marriage, was not subject to the control of Phillips, her subsequent husband, nor, of course, liable to his debts. The principle is this: The husband finds his wife in the enjoyment of property that is separate property; and though, when a widow, she might do with it as she pleased, chancery will not permit the common, legal rights of the husband to be extended over such property. 2 *Story Eq.*, sec. 1384, *Newland vs. Paynter*, 4 *M. & C.* 417, 418; *Nedby vs. Nedby*, *ib.* 376.

Doubtless, a settlement could be so worded as to exclude only the interest of a particular husband, and the intention should prevail when it appears to be directed only against an existing, or particularly contemplated husband. But in this case, as ordinarily in provisions made for daughters, that are, or may be wives, the intention is to provide for the wife, or the wife and children, though all the acts of survivorship are not mentioned. See *Allen vs. Crawshay*, 9 *Hare* 382. Upon this principle, when property was settled upon a married woman, to be held against the interference of any future husband, the restriction was held valid against the present husband. *Steedman vs. Poole*, 6 *Hare* 193. See, also *Brown vs. Baneford*, 1 *Ph.* 624.

Notwithstanding the principle of *Tullett vs. Armstrong*, and *Newland vs. Paynter*, would seem to us, as above expressed, to require that property settled to the separate use of a married woman, would not be subject to any charge made upon it by an after taken husband, Vice Chancellor WIGRAM declined, though manifestly against his inclination, so to decide, thinking himself bound by *Knight vs. Knight, Benson vs. Benson* and *Bradley vs. Hughes*, heretofore mentioned. In that case, the settlement was of a fund to the wife for her separate use: her present husband, a party to the settlement, not being permitted to intermeddle with the fund, which after the death of the wife, was to go to the hus-

band, and after the death of the survivor, to the children of the marriage. The husband died, the wife married again, when she, with her husband, charged the fund with annuities, and the ques tion was raised by the trustees upon the validity of the charge. The only question between counsel was, whether *Tullett vs. Armstrong* did not govern the case, and the Vice Chancellor held the contrary, and decided the case in accordance with the cases before mentioned. In *Re Gaffee's settlement*, 7 *Hare* 101. This case was taken before the Lord Chancellor, by appeal, and is reported in 1 *Hall & Twells*, 635, in 1 *McNaughten & Gordon* 54, and in 14 *Jurist*, 277. We have not been able to consult the case in any of the reports, neither of the books containing it being within our reach, but in a note to the 2d American edition of *Hill on Trustees, page* ——, the case is mentioned; and as we should have expected, was reversed, on the ground that the cases that limited a separate estate to an existing coverture were founded on a supposed rule of equity, that separate property could only be settled upon a married woman, or upon one in contemplation of a particular marriage. According to the extract from the report in the note, Lord COTTENHAM, said : " It being now " settled that a gift to the separate use, without power of anticipa- " tion, will operate on all the covertures of a woman, unless " these provisions are destroyed while she is discovert, these " cases [referring to *Knight vs. Knight, Benson vs. Benson*, and " *Bradley vs. Hughes*,] cannot be considered as applicable to this " case, which must therefore depend on the construction to be " put on the words used :" and then is laid down a rule of construction, that if the restriction or anticipation is part of the gift, the estate given, and the restriction against alienation or anticipation, must be commensurate. We are satisfied that such a decision as is represented in the note, will be found in the reports of the case; and we cannot think that any other would be made by the court of last resort, after *Tullett vs. Armstrong*, and the kindred cases.

In this case, there is no construction to be put upon any clause of anticipation, for Mrs. Phillips has not attempted to sell, or charge the property; and the clause against anticipation was in-

troduced in settlements for the purpose of defending a married woman against her own act, which the influence of her husband might induce her to commit, and cannot be brought under consideration when the act complained of, is that of the husband, or persons claiming his right.

To decide that Mrs. Phillips' life estate was subject to the debts of her husband, would be to decide that she had no separate property. We think that Mrs. Johnson acquired a separate interest in Rebecca and her increase, which was not confined by the terms of the gift to the existing coverture : that the property being separate property when she married Phillips, it was not subject to his control, nor to his debts.

The law is, also, well settled that a restriction upon the alienation of separate property, during the life of a married woman to whom it is given, is not unlawful, for this restriction is the only means to make the separate estate effectual to promote its object, the benefit of the married woman. Holding the contrary of this, and upon authorities repeatedly overruled, was the mistake of *Lindsay vs. Harrison*, 3 *Eng.* 311, although that part of the opinion was not a part of the decision of the case.

The appellees have no more right to the property than the husband had. *Beekman vs. Cowser*, 22 *Ark.* 432; *Bennett vs. Davis*, 2 *P. W.* 319; *Langton vs. Horton*, 1 *Hare* 560. And as he had none, they have none ; and their executions were properly enenjoined, and the injunction was improperly dissolved.

Let the decree be reversed, the preliminary injunction be restored, and the case remanded for further proceedings. The husband of Mrs. Phillips should have been made a defendant, and she is entitled to leave to amend her bill in this respect, and as she shall be advised.